# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK PERRINO,<br><br>    Plaintiff,<br><br>v.<br><br>JEFFREY DYE,<br><br>    Defendant. | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Patrick Perrino ("Plaintiff" or "Perrino"), by his undersigned attorneys, for his Complaint against Defendant Jeffrey Dye ("Defendant" or "Dye"), states as follows:

## PARTIES

1. Plaintiff is an individual who resides at 400 Sunny Isles Blvd., Apt. 1221, Sunny Isles, Florida.

2. Defendant is an individual who, on information and belief, resides at 101 Newbridge Road, Egg Harbor Township, New Jersey.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.00.

4. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2) because this District is the location where a substantial part of the events or omissions giving rise to the claim occurred. Specifically, Defendant intentionally sent a text message containing defamatory material about Plaintiff to an individual who resides, and upon belief was then present, in this District.

## FACTS COMMON TO ALL COUNTS

5.  This action arises from a defamatory text message Dye sent to a third party in September 2022 falsely accusing Perrino of a heinous crime ("Defamatory Text").

6.  Perrino first learned of the Defamatory Text on **July 1, 2024**, when he received a copy of the Defamatory Text in discovery relating to a lawsuit that is currently pending in the Superior Court of New Jersey, Law Division, Atlantic County, captioned *Dye v. Atlantic Exposition Services, Inc. et al.*, docket no. ATL-L-002481-22 ("New Jersey Suit").

7.  By way of background, Perrino is the president and owner of Atlantic Exposition Services, Inc. ("AEX").

8.  AEX employed Dye until it terminated his employment on or around May 31, 2022.

9.  Dye initiated the New Jersey Suit by filing a complaint on September 7, 2022 against AEX, Perrino, and other individuals ("New Jersey Defendants"). The complaint asserted Dye's termination was unlawful.

10. On October 7, 2022, the New Jersey Defendants filed an answer and counterclaim, denying Dye's allegations in full and asserting claims against Dye for breach of restrictive covenants he owed to AEX.

11. The New Jersey Defendants also filed a third-party complaint against a competitor entity, General Exposition Services, Inc. ("General") and against Christopher Rowan, another former AEX employee. Both Dye and Rowan had since gone to work for General.

12. On or around August 21, 2023, the New Jersey Defendants served Dye, Rowan, and General with interrogatories and requests for production of documents.

13. On July 1, 2024, Rowan produced documents to Defendants. These included a copy of a text message exchange between Dye and Joseph Boyle, a General executive ("Text Message Exchange"). The Text Message Exchange spans from August 10, 2022 to October 20, 2022.

14. The Text Message Exchange includes a text message dated September 30, 2022 from Boyle to Dye, in which Boyle related to Dye that AEX had served General with a demand letter asserting that Dye and Rowan were bound by non-compete agreements.

15. In a responding text message, Dye asserted that AEX's demand letter was simply a "scare tactic" in an attempt to counter the New Jersey Suit.

16. Dye then accused Perrino of serious sexual criminal misconduct ("Defamatory Text").

17. The Defamatory Text Message is a vile lie with no shred of truth. Indeed, during a deposition in the New Jersey Suit, Dye admitted under oath that he had no reason to believe his accusation against Perrino was true. When counsel asked Dye, "So you didn't tell the truth when you called him a ---?" Dye responded, "I'm surprised I spelled it right."

18. On information and belief, Boyle is currently a Pennsylvania resident, and was a Pennsylvania resident when Dye sent him the Defamatory Text.

19. Perrino had no knowledge of the Defamatory Text, and no reason to suspect its existence, until Rowan produced the Defamatory Text in discovery on July 1, 2024.

20. On discovering the Defamatory Text Message, Perrino suffered personal humiliation, and mental anguish and suffering.

21. Additionally, the Defamatory Text Message harmed Perrino's reputation and standing in the community, including in the eyes of a competitor. It may also have been relayed and spread to other individuals.

### COUNT I—DEFAMATION

22. Perrino incorporates the foregoing allegations as if fully set forth herein.

23. Through the Defamatory Text Message, Dye communicated to Boyle a false, defamatory statement about Perrino.

24. The Defamatory Text Message related to Perrino, and was intended to be understood by Boyle as relating to Perrino.

25. Boyle understood the Defamatory Text Message related to Perrino.

26. Boyle understood the Defamatory Text Message was defamatory in nature.

27. Dye sent the Defamatory Text Message maliciously, recklessly, and/or negligently, with knowledge of the falsity of the Defamatory Text Message, or with reckless or negligent disregard of whether the Defamatory Text Message was false.

28. Dye had no legal privilege or other justification for sending the Defamatory Text Message.

29. As a direct and proximate result of the Defamatory Text Message, Perrino has suffered actual damages, including special damages, financial loss, impaired reputation and standing in the community, personal humiliation, and mental anguish and suffering.

WHEREFORE, Perrino demands judgment in his favor and against Dye, and requests an award of compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as the court deems just and equitable.

## COUNT II—DEFAMATION PER SE

30. Perrino incorporates the foregoing allegations as if fully set forth herein.

31. Through the Defamatory Text Message, Dye communicated to Boyle a false, defamatory statement about Perrino.

32. The Defamatory Text Message related to Perrino, and was intended to be understood by Boyle as relating to Perrino.

11447932 v1

33. Boyle understood the Defamatory Text Message related to Perrino.

34. Boyle understood the Defamatory Text Message was defamatory in nature.

35. Dye sent the Defamatory Text Message maliciously, recklessly, and/or negligently, with knowledge of the falsity of the Defamatory Text Message, or with reckless or negligent disregard of whether the Defamatory Text Message was false.

36. Dye had no legal privilege or other justification for sending the Defamatory Text Message.

37. The Defamatory Text Message falsely accused Perrino of committing an infamous crime and/or serious sexual misconduct; tended to subject Perrino to hatred, distrust, ridicule, contempt, and disgrace; and tended to injure Perrino's professional reputation.

38. Therefore, the Defamatory Text Message constitutes defamation *per se*.

39. As a direct and proximate result of the Defamatory Text Message, Perrino has suffered actual damages, including special damages, financial loss, impaired reputation and standing in the community, personal humiliation, and mental anguish and suffering.

WHEREFORE, Perrino demands judgment in his favor and against Dye, and requests an award of compensatory damages, punitive damages, attorneys' fees and costs, and such other relief as the court deems just and equitable.

### DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE THAT Plaintiff demands a trial by jury on all issues so triable.

### NOTICE OF DESIGNATION OF TRIAL COUNSEL

PLEASE TAKE NOTICE THAT Adam E. Gersh, Esquire is hereby designated trial counsel in this litigation on behalf of Plaintiff.

DATED: March 12, 2025                             **FLASTER/GREENBERG P.C.**

11447932 v1

        *Attorneys for Plaintiff Patrick Perrino*

By: <u>/s/ *Adam E. Gersh*</u>
     Adam E. Gersh, Esquire (ID: 92405)
     Daniel C. Epstein, Esquire (ID: 327819)
     Commerce Center
     1810 Chapel Avenue West
     Cherry Hill, NJ 08002
     Telephone: 856-661-1900
     Facsimile:  856-661-1919